## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ALTROVISE D. GLENN, | ) | CASE NO. 3:13CV1090 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JOHN COLEMAN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Altrovise D. Glenn ("Glenn"), challenges the constitutionality of his

convictions in the cases of *State v. Glenn*, Allen County Court of Common Pleas Case Nos.

CR2007-0261 and CR2007-0390.  Glenn, *pro se*, filed a Petition for Writ of Habeas Corpus

(Doc. No. 1) pursuant to 28 U.S.C. § 2254 on May 13, 2013.  On July 8, 2013, Warden Kevin

Jones[1] ("Respondent") filed a Motion to Dismiss the Petition as Time-Barred.  (Doc. No. 6.)

Glenn replied on August 22, 2013.  (Doc. No. 8.)  On January 10, 2014, the Court denied the

Motion to Dismiss without prejudice, and ordered Respondent to answer the Petition.  (Doc. No.

9.)

---

[1]  Respondent asserts that Glenn is currently incarcerated at Allen/Oakwood Correctional
Institution and that Kevin Jones (as opposed to John Coleman) is the Acting Warden of
that facility.  Mr. Jones, therefore, is the proper party Respondent in this action.  (Doc.
No. 10 at fn 1.)

Respondent filed a Return of Writ on February 6, 2014.  (Doc. No. 10.)  Glenn filed his

Traverse on April 11, 2014.  (Doc. No. 17.)  He thereafter filed a "Motion for Leave to File

Motion for Stay and Abeyance Pursuant to 28 U.S.C. Section 2251(a)(2)," which Respondent

opposed.  (Doc. Nos. 18, 19.)

For reasons set forth in detail below, it is recommended that Glenn's Motion for Stay and

Abeyance be DENIED.  It is also recommended that his Petition be DISMISSED.

## I.  Procedural History

### A.    Conviction

In July of 2007, an Allen County Grand Jury charged Glenn in Case No. CR2007-0261

with one count of selling crack cocaine in an amount that equals or exceeds one gram but does

not exceed five grams in the vicinity of a school in violation of Ohio Revised Code ("O.R.C.") §

2925.03(A)(1) & (C)(4)(c) (Count One); four counts of knowingly allowing a vehicle to be used

in a felony drug abuse offense in violation of O.R.C. § 2925.13(A) & (C)(3) (Counts Two, Four,

Six, and Eight); and, three counts of selling crack cocaine in an amount that equals or exceeds

ten grams but does not exceed twenty-five grams in the vicinity of a school in violation of

O.R.C. § 2925.03(A)(1) & (C)(4)(e) (Counts Three, Five, and Seven).  (Doc. No. 6-1 at 1-9

(Exh. 1).)  On October 15, 2007, Glenn pled not guilty to all charges.  (Doc. No. 6-1 at 9 (Exh.

1).)

In December of 2007, an Allen County Grand Jury charged Glenn in Case No. CR2007-

0390 with one count of possession of crack cocaine in an amount that equals or exceeds twenty-

five grams but does not exceed one hundred grams in violation of O.R.C. § 2925.11(A) &

(C)(4)(e) (Count One); and one count of having a weapon while under disability in violation of

O.R.C. § 2923.13(A)(2) (Count Two). (Doc. No. 6-1 at 10-12 (Exh. 2)). On December 20, 2007, a written plea of not guilty was entered as to these charges. (Doc. No. 6-1 at 13 (Exh. 3)).

On June 12, 2008, during a consolidated change of plea hearing and pursuant to two separate plea agreements, Glenn withdrew his not guilty pleas and pled guilty to the following charges: (1) three counts of trafficking crack cocaine as set forth in Counts One, Three, and Five in Case No. CR2007-0261 (with Counts Three and Five amended to delete the specification that the offenses occurred within the vicinity of a school); and, (2) having weapons while under disability as set forth in Case No. CR2007-0390. (Doc. No. 6-1 at 14-15 (Exh. 4); Doc. No. 11-1; Doc. No. 16-1 at 1-2 (Exh. 29)). *See also* Doc. No. 6-1 at 103 (Exh. 15)). The State entered a *nolle prosequi* on the remaining counts in both cases. (Doc. No. 6-1 at 103 (Exh. 15)). The trial court accepted Glenn's guilty pleas and entered judgments of conviction in both cases on June 12, 2008. (Doc. No. 6-1 at 16-19 (Exhs. 5, 6)).

On September 21, 2010,[2] the trial court sentenced Glenn as follows. In Case No. CR2007-0261, four years incarceration on Count One; seven years on Count Three; and, seven years on Count Five. (Doc. No. 6-1 at 20-23 (Exh. 7); Doc. No. 6-2 at 17.) The sentences on Counts One and Three were to be served concurrently, but consecutively to the sentence for Count Five. (Doc. No. 6-1 at 20-23 (Exh. 7); Doc. No. 6-2 at 18.) Glenn was also ordered to pay mandatory fines of $10,000 on Counts Three and Five, which fines would be waived upon proper filing of an Affidavit of Indigency. (Doc. No. 6-1 at 20-23 (Exh. 7); Doc. No. 6-2 at 17-

---

[2] Respondent asserts the delay between Glenn's guilty pleas and sentencing was due to the fact that Glenn "failed to show up at court for his scheduled sentencing hearing" and was "at large for more than two years" before being arrested and returned to court for sentencing. (Doc. No. 10 at 3.)

18.)  In addition, Glenn was ordered to pay $2,370.00 in restitution to the West Central Ohio

Crime Task Force and to pay all costs of prosecution.  (Doc. No. 6-1 at 20-23 (Exh. 7); Doc. No.

6-2 at 19.)  In Case No. CR2007-0390, the sentence was five years incarceration on Count Two,

to be served consecutive to his sentence in Case No. CR2007-0261.  (Doc. No. 6-1 at 24-26

(Exh. 8); Doc. No. 6-2 at 18.)  The sentences resulted in an aggregate prison term of nineteen

(19) years.  (Doc. No. 6-1 at 105 (Exh. 15); Doc. No. 6-2 at 18, 20.)

**B.  Direct Appeal**

On October 18 and October 21, 2010, Glenn, through counsel, filed separate Notices of

Appeal with the Court of Appeals for the Third Appellate District ("state appellate court") with

respect to his convictions and sentences in both Case Nos. CR2007-0261 and CR2007-0390.

(Doc. No. 6-1 at 27-30 (Exhs. 9, 10).)  The state appellate court later consolidated the appeals.

(Doc. No. 6-1 at 33 (Exh. 12).)  Glenn raised the following sole assignment of error:

> THE TRIAL COURT COMMITTED ERROR IN IMPOSING CONSECUTIVE
> TERMS OF IMPRISONMENT AND A MAXIMUM TERM OF
> INCARCERATION WHERE THE RECORD DOES NOT SUPPORT THE
> COURT'S FINDINGS AND WHERE SAID SENTENCES ARE CONTRARY
> TO LAW.

(Doc. No. 6-1 at 38 (Exh. 13).)[3]  On March 28, 2011, Glenn's conviction was affirmed.  (Doc.

No. 6-1 at 101-110 (Exh. 15).)

On March 27, 2012, Glenn filed a *pro se* Notice of Appeal and Motion for Delayed

Appeal with the Supreme Court of Ohio.  (Doc. No. 6-1 at 111-126 (Exhs. 16, 17).)  In his

motion, Glenn argued his appellate counsel had failed to timely inform him of the state appellate

_____

[3]  Glenn was represented at trial and on direct appeal by the same attorney, James C.
King.

-4-

court decision affirming his convictions and sentences and, further, had failed to file a timely appeal to the Supreme Court of Ohio. (Doc. No. 6-1 at 114 (Exh. 17).) On May 9, 2012, Glenn's Motion for Delayed Appeal was denied. (Doc. No. 6-1 at 127 (Exh. 18).)

## C. Post-Conviction Motions

Meanwhile, on June 23, 2011, Glenn filed *pro se* motions in Case Nos. CR2007-0261 and CR2007-0390 to vacate and/or suspend court costs. (Doc. No. 6-1 at 128-137 (Exhs. 19, 20).) On June 27, 2011, the trial court denied Glenn's motions. (Doc. No. 6-1 at 138-141 (Exhs. 21, 22).) The record does not indicate Glenn appealed this ruling.

On February 13, 2014, Glenn filed *pro se* motions in both state court cases to withdraw plea pursuant to Ohio Criminal Rule 32.1. (Doc. No. 16-1 at 3-7, 14-18 (Exhs. 30, 32).) The motions were denied on February 28, 2014. (Doc. No. 16-1 at 8-13, 19-24 (Exhs. 31, 33).) Glenn did not appeal. (Doc. No. 24.)

## D. Federal Habeas Petition

On May 13, 2013, Glenn filed a Petition for Writ of Habeas Corpus[4] and asserted the following grounds for relief:

> **GROUND ONE**: Petitioner was denied his due process right to jury trial and the effective assistance of trial counsel, in violation of the Due Process and Equal Protection Clauses of the United States Constitution, and Article I, Section 10 of the Ohio Constitution, where the trial court committed error in imposing consecutive terms of imprisonment and a maximum term of incarceration, where the record failed to support the state trial court's findings and where said sentences are contrary to law.
>
> **Supporting Facts**: The record failed to support the finding that imposition of the maximum term of incarceration is appropriate and Petitioner's conviction

---

[4] Although the Petition was filed on May 13, 2013, it was signed by Glenn on April 17, 2013. (Doc. No. 1 at 6.)

and sentence is illegal as a matter of law.  If not for the ineffective assistance of counsel, Petitioner would have elected to proceed to trial and the outcome of the proceedings would have been different.

**GROUND TWO**: Petitioner was denied his due process right to jury trial and the effective assistance of trial counsel, in violation of the Due Process and Equal Protection Clauses of the United States Constitution, and Article I, Section 10 of the Ohio Constitution, where Petitioner was denied the effective assistance of trial counsel during the plea bargaining critical stage of his jury trial proceedings.

**Supporting Facts**: State trial counsel advised Petitioner to plead guilty to a crime for which he was not guilty of, that existed without evidence to support a finding of guilt. State trial counsel also refused to proceed to jury trial as Petitioner so desired.  Petitioner was subjected to a breach of contract, where the conviction and sentence advised and promised by counsel and the State prosecutor was withheld once Petitioner had plead guilty.  Instead, Petitioner was adjudicated to a greater punishment.

(Doc. No. 1.)

On July 8, 2013,  Respondent filed a Motion to Dismiss the Petition as Time-Barred. (Doc. No. 6.)  Glenn replied on August 22, 2013.  (Doc. No. 8.)  On January 10, 2014, the Court denied the Motion to Dismiss without prejudice, and ordered Respondent to address (1) whether a state-created impediment prevented Glenn from timely filing his habeas petition; and, (2) the merits of Glenn's habeas grounds for relief.  (Doc. No. 9.)  Respondent filed a Return of Writ on February 6, 2014, in which he addressed the merits of Glenn's habeas grounds but failed to address the issue of any state-created impediment.  (Doc. No. 10.)

On March 24, 2014, Glenn filed a Motion to Compel Discovery.  (Doc. No. 14.)  The Court denied Glenn's motion on March 25, 2014; however, it ordered Respondent to supplement the habeas record with (1) any negotiated guilty plea agreement entered in Case No. CR2007-0390; and, (2) Glenn's Motions to Withdraw Guilty Plea filed in state trial court, as well as any other filings or court orders relating thereto.  (Doc. No. 15.)  Respondent supplemented the

-6-

record as ordered on April 4, 2014.  (Doc. No. 16.)

Glenn filed his Traverse on April 11, 2014.  (Doc. No. 17.)  He thereafter filed a "Motion for Leave to File Motion for Stay and Abeyance Pursuant to 28 U.S.C. Section 2251(a)(2)," in which he seeks leave to amend his habeas petition as well as stay and abeyance to exhaust his new claims.  (Doc. No. 18.)  Respondent filed a Brief in Opposition, and Glenn replied.  (Doc. No. 19, 21.)  Glenn then filed a document captioned "Judicial Notice," which also seeks leave to amend, and stay and abeyance.  (Doc. No. 20.)  Respondent opposed, and Glenn replied. (Doc. Nos. 22, 23.)

## II.  Motion for Leave to File Motion for Stay and Abeyance (Doc. No. 18)

In his "Motion for Leave to File Motion for Stay and Abeyance," Glenn asserts the signatures on his December 20, 2007 Written Plea of Not Guilty (Doc. No. 6-1 at 13 (Exh. 3)) and June 12, 2008 Negotiated Pleas of Guilty (Doc. Nos. 6-1 at 14-15 (Exh. 4) and 16-1 at 1-2 (Exh. 29)) are forged.  He claims that this constitutes "newly discovered evidence," entitling him to amend his habeas petition to assert "newly discovered Constitutional violations."  (Doc. No. 18 at 2-3.)  Glenn also requests a stay and abeyance in order to pursue these claims in state court. He does not, however, clearly identify the nature of his new claims aside from arguing generally that he is actually innocent and that the State is guilty of abuse of process in submitting fraudulent signatures to the trial court.

Respondent argues Glenn "has failed to state any basis justifying the relief of stay and abeyance in this action."  (Doc. No. 19 at 2.)  He claims Glenn received a copy of the documents at issue in July 2013 when Respondent filed the state court record in this case, and there is no justification for Glenn's failure to wait nearly a year to argue his signatures were forged.

-7-

Respondent also maintains Glenn's motion should be denied because he fails to clearly identify the new habeas claims he proposes to add.  Finally, Respondent argues he would be prejudiced by allowing Glenn to amend his petition, in light of the fact this matter is now fully briefed.

Motions to amend a habeas corpus petition are governed by Rule 15(a) of the Federal Rules of Civil Procedure.  *See Shank v. Mitchell,* 2013 WL 3208554 at * 3 (S.D. Ohio June 24, 2013) ("Amendments to habeas corpus petitions were contemplated by the habeas corpus statute and are governed by Rule 15 of the Federal Rules of Civil Procedure").  *See also Hughley v. Reid*, 2010 WL 610765 at * 2 (N.D. Ohio Feb. 18, 2010); *see also Lanton v. Lafler,* 2007 WL 858722 at * 1 (E. D. Mich. March 16, 2007).  Under Rule 15(a), a party may amend his or her pleadings once as a matter of course at any time before a responsive pleading is served.  *Id.* Otherwise, the party may amend only with the opposing party's written consent or by leave of court, which "shall be freely given when justice so requires."  *Id*. citing Fed.R.Civ.P. 15(a); *see Mayle v. Felix*, 545 U.S. 644, 655, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).

As Respondent herein has already filed a Return and opposes Glenn's attempt to amend his petition, leave of court is required.  As the Sixth Circuit has explained:

> Under Rule 15(a), leave to amend a pleading shall be freely given when justice so requires.  This court has explained the factors that a district court should consider when deciding whether to grant leave to amend.  Several elements may be considered in determining whether to permit an amendment.  Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision.  Delay by itself is not sufficient reason to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).  A district court's decision whether to grant a motion to amend the petition

-8-

pursuant to Fed.R.Civ.P. 15(a) generally is reviewed for an abuse of discretion.  *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 305 (6th Cir. 2001); *Shank v. Mitchell*, 2013 WL 3208554 at * 3.

The Court denies Glenn's request for leave to amend his habeas petition.  As an initial matter, Glenn does not clearly identify the claims he wishes to add.  Construing his Motion for Leave and "Judicial Notice" liberally, it appears Glenn may be seeking to raise a claim that the allegedly forged signatures at issue demonstrate his guilty plea was neither knowing, intelligent or voluntary.  However, during a change of plea hearing on June 12, 2008, Glenn expressly acknowledged that the signatures on the negotiated guilty plea forms in both of his criminal cases were, in fact, his signatures:

> THE COURT: Alrighty, okay, then let the record reflect the Court is in receipt of a negotiated plea of guilty in each of these cases; indicating in case number two-sixty-one, defendant's pleading guilty to counts one as indicated, and three and five as amended uh, an F-3 and two F-2s respectively; and other counts will be dismissed.
>
> And in [case number] zero-three-ninety, he's pleading guilty to count two, the felony of the third degree, having a weapon under disability.  **And both of these are signed on the line marked defendant; Mr. Glenn, is that your signature on both these?**
>
> **MR. GLENN: Yes, sir.**

(Doc. No. 11-1 at 26) (emphasis added).  Glenn then acknowledged that he "knew what he was doing" and he wanted the trial court to accept his guilty pleas.  (Doc. No. 11-1 at 26-27.)  Glenn's counsel thereafter formally withdrew his former not guilty pleas.  (Doc. No. 11-1 at 27.)  Thus, Glenn's assertion in his Motion for Leave that the "signature given on [the] June 12, 2008 [negotiated guilty pleas] is not his signature" (Doc. No. 18 at 3) is flatly contradicted by the record.

-9-

Moreover, the Court rejects Glenn's argument that he could not have raised this claim earlier because he did not have copies of the negotiated guilty pleas when he filed his Petition. In previous filings with this Court, Glenn attached a copy of a letter dated July 1, 2011 in which a state assistant public defender forwarded Glenn copies of the "written plea agreements for case numbers CR20070261 and CR20070390 out of Allen County." (Doc. No. 8-1 at 2.) Glenn's habeas petition was signed nearly two years later, on April 17, 2013. (Doc. No. 1 at 6.) In light of the above, the Court can discern no basis for Glenn's argument that the allegedly forged signatures on the negotiated guilty plea forms at issue constitute "newly discovered evidence."

Glenn also claims the signature on his December 20, 2007 Written Plea of Not Guilty is forged. He emphasizes that his name is "Altrovise D. Glenn," whereas the signature on the form states "s/ Altrovise C. Glenn." (Doc. No. 6-1 at 13 (Exh. 3).) Even assuming this signature is not Glenn's and, further, that he did not authorize his attorney or other representative to sign his name for him, Glenn fails to articulate how this would support amending his habeas petition to add a new federal constitutional claim. Glenn makes no claim that his plea of not guilty at his December 20, 2007 arraignment was against his will. Nor does he explain how an allegedly fraudulent signature on the not guilty plea form is relevant given that he subsequently changed his plea to guilty during the June 2008 Change of Plea Hearing; and, identified his signatures on the guilty plea forms submitted to the state trial court.[5] Accordingly, the Court finds Glenn has

---

[5] Glenn also appears to assert that he should be permitted to amend his habeas petition because he is "actually innocent." (Doc. No. 18 at 2.) Other than summarily claiming it would be a "miscarriage of justice" to deny him leave to amend, however, he makes no meaningful argument and cites no evidence in support of this argument. The Court, therefore, denies leave to amend to raise a claim of actual innocence.

failed to demonstrate leave should be granted to allow him to amend his Petition based on the allegedly forged signatures at issue.

Finally, the Court finds that leave to amend should be denied for the additional reason that it would cause undue prejudice.  Glenn filed his Petition over a year ago, in May 2013, and Respondent has already filed his Return.  Glenn filed his Traverse, and this matter is now ripe for adjudication.  The Court finds it would be unduly prejudicial to require Respondent to respond to entirely new, unidentified habeas claims at this stage in the litigation.  Accordingly, and for all the reasons set forth above, the Court denies Glenn's request for leave to amend his habeas petition.

Glenn also requests the Court stay the instant action and hold it in abeyance while he pursues his new claims.  The Sixth Circuit, relying on the Supreme Court's decision in *Rhines v. Weber*, 544 U.S. 269 (2005), has held that stay and abeyance "should only be available in instances where the petitioner can: 1) show good cause for failing to present the claims before the state court in the first instance, and 2) show that his unexhausted claims are not 'plainly meritless.'"  *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009).  However, even if the first two conditions are satisfied, "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all."  *Rhines*, 544 U.S. at 277-78.

Here, Glenn has failed to demonstrate good cause for failing to present the claims discussed above before the state court in the first instance.  Nor has he shown that these claims are not plainly meritless.  Moreover, the Court finds a stay would not be appropriate for the additional reason that the Petition was filed over a year ago; is fully briefed and ripe for review; and, Glenn has failed to explain why he did not raise this issue sooner.

-11-

Therefore, and for all the reasons set forth above, Glenn's Motion for Leave to File Motion for Stay and Abeyance (Doc. No. 18) is denied.

### III.  Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

### A.  One-Year Limitation

The AEDPA establishes a general rule that there is a one-year statute of limitations for filing a habeas petition in federal court for persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). *See Mackey v. Warden, Lebanon Correctional Institution*, 2013 WL 1908890 at * 3 (6th Cir. May 9, 2013). Subsection 2244(d)(1)(A) indicates that the limitations period runs from the date on which the state court judgment becomes final by conclusion of direct review or the expiration of the time for seeking such review, whichever is later. "For petitioners who do not pursue direct appeals in a state's highest court, judgments become final for purposes of § 2244(d)(1)(A) when the time for seeking discretionary review in the state's highest court expires." *Mackey*, 2013 WL 1908890 at * 3 (citing *Gonzalez v. Thaler*, — U.S. ----, 132 S.Ct. 641, 653-54 (2012)).

Here, Glenn was sentenced on September 21, 2010 and filed timely notices of appeal to the state appellate court in Case Nos. CR2007-0261 and CR2007-0390 on October 18 and October 21, 2010, respectively. (Doc. No. 6-1 at 20-30 (Exhs. 7, 8, 9, 10) and Doc. No. 6-2.) The state appellate court affirmed his convictions and sentences in both cases on March 28, 2011, and Glenn did not timely appeal. (Doc. No. 6-1 at 101-110 (Exh. 15).) Based on this sequence of events, Respondent argues Glenn's convictions and sentences became final on May 12, 2011, forty-five (45) days after the state appellate court affirmed his convictions and sentences. Because he did not sign and mail the Petition until April 17, 2013, Respondent maintains Glenn's habeas petition is untimely and should be dismissed on that basis. (Doc. No. 10 at 8-9.)

Relying on *Jimenez v. Quarterman*, 555 U.S. 113, 129 S.Ct. 681 (2009), Glenn argues his conviction and sentence did not become final for purposes of § 2244(d)(1)(A) until May 9, 2012, the date on which the Ohio Supreme Court resolved his delayed appeal. (Doc. No. 8 at 8.) In

-13-

*Jimenez*, the petitioner was granted leave to file an out-of-time appeal by the state court. *Id.* at 116. The state courts denied relief in that appeal and additional state post-conviction proceedings. *Id.* Jimenez then filed a federal habeas petition, which was dismissed by the district court as untimely under section 2244(d)(1)(A). *Id.* at 116–18. The Supreme Court found that Jimenez's direct review became final when his delayed appeal was resolved and the time for seeking certiorari review in the Supreme Court expired, and not when his original appeal was dismissed by the state courts, because the order granting the out-of-time appeal restored the pendency of his direct appeal. *Id.* at 120–21. However, the Court stressed that its holding was a "narrow one" and emphasized that it applied only "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief." *Id.* at 121.

The instant case is clearly distinguishable from *Jimenez* because, here, the Ohio Supreme Court *denied* Glenn's motion for delayed appeal. Because he was not permitted to reopen his appeal, the statute of limitations period was not "reset," as it was in *Jimenez*. *See Ashcraft v. Warden, Lebanon Correctional Inst.,* 2014 WL 2532334 at * 4 (S.D. Ohio June 5, 2014) (noting that "it is well-settled that unsuccessful motions for leave to file a delayed appeal, such as the one filed by petitioner in this case, do not restart the running of the statute under § 2244(d)(1)(A), but rather only can serve to toll an unexpired limitations period under § 2244(d)(2)"); *Black v. Warden, Lebanon Correctional Inst.,* 2013 WL 3811774 at * 5 (S.D. Ohio July 19, 2013); *Taher v. Warden, Warren Correctional Inst.*, 2013 WL 485789 at * 6 (S.D. Ohio Feb. 6, 2013). *See also Gonzalez*, 132 S.Ct. at 653 (noting that the state court had permitted Jimenez to file an out-of-time direct appeal and that "this 'reset' the limitations period"). Thus, the Court agrees with Respondent that

-14-

Glenn's convictions and sentences became final on May 12, 2011, forty-five (45) days after they were affirmed by the state appellate court.

The record reflects Glenn thereafter filed post-conviction Motions to Vacate and/or Suspend Court Costs on June 23, 2011. At that time, forty-two (42) days of the federal habeas limitations period had elapsed. The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*

Respondent does not consider the filing and pendency of Glenn's post-conviction motions when calculating the running of the limitations period. Respondent gives no explanation for this omission, nor does he cite any case law supporting the position that Glenn's motions should not toll the statute of limitations.[6] Giving Glenn every benefit of the doubt, the Court will assume for purposes of this Report & Recommendation that his post-conviction motions tolled the running of limitations period. The record reflects the motions were filed on June 23, 2011 and denied by the state trial court on June 27, 2011. (Doc. No. 6-1 at 128-141 (Exhs. 19, 20 21, 22).) The record further reflects Glenn did not appeal this ruling. Accordingly, the Court assumes the statute of limitations was tolled from June 23, 2011 until July 27, 2011, thirty days after the trial court denied

---

[6] Although Glenn's Post-Conviction Motion does not appear to raise a federal constitutional claim, the Sixth Circuit has held that a state petition for post-conviction relief or other collateral review does not need to present a federally cognizable claim for it to toll the statute of limitations under § 2244(d)(2). *See Cowherd v. Million*, 380 F.3d 909, 913-914 (6th Cir. 2004).

Glenn's motion.[7]

   The limitations period began to run again on July 28, 2011, and continued to run until March 27, 2012 (for 243 days), the date on which Glenn filed his Motion for Delayed Appeal.  At this point, 285 days of the federal habeas limitations period had elapsed.  The statute of limitations was tolled from March 27, 2012 until May 9, 2012, the date on which the Supreme Court of Ohio denied Glenn's Motion for Delayed Appeal.  Therefore, the statute of limitations began to run again on May 10, 2012.[8]  Glenn had 80 days from this date (or until July 29, 2012) within which to timely file his federal habeas petition.  The record reflects Glenn did not sign his habeas Petition until April 17, 2013, well after the limitations period expired.[9]

_____

[7]  Given that Glenn did not appeal the denial of his post-conviction motion, it is unlikely the statute would, in fact, be tolled under § 2244(d)(2) during the thirty day time period for appeal.  In light of Glenn's *pro se* status, however, the Court will provide him every possible benefit of the doubt and include this thirty-day time period in its tolling calculations.

[8]  Consistent with the other district courts within this Circuit, the Court finds that Glenn's motion for delayed appeal is an application for collateral review.  *See, e.g., Searcy v. Carter*, 246 F.3d 515, 518–19 (6th Cir. 2001),  *Israel v. Warden, Lebanon Correctional Inst.,* 2013 WL 5785945 at * 4 (S.D. Ohio Oct. 28, 2013); *LeFlore v. Bradshaw*, 2010 WL 4449280 at * 3 (N.D. Ohio Oct. 6, 2010); *Lee v. Warden*, 2009 WL 1911917, at *1 (S.D.Ohio June 30, 2009) (holding that "state court motions for delayed appeal are considered to be post conviction or collateral proceedings, and the statute of limitations therefore is not tolled during the time period that petitioner could have filed a petition for a writ of certiorari to the United States Supreme Court from the Ohio Supreme Court's denial of such a motion."); *Sudberry v. Warden*, 626 F.Supp.2d 767, 770–71 (S.D.Ohio 2009); *Foster v. Bobby,* 2010 WL 1524484 at * 3 (N.D.Ohio Apr.15, 2010).  Accordingly, and in light of *Lawrence v. Florida*, 549 U.S. 327 (2007), Glenn is not entitled to § 2244(d)(2) tolling for the 90 day time period following the denial of his motion for delayed appeal.  *Lawrence*, 549 U.S. at 334.

[9]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  In cases where it is unclear when an inmate deposits legal documents with prison officials, courts have assumed that it was done on the date the document was purportedly signed.  *See Hollins v. Pineda*, 2012 WL 3023263 at * 3, fn 6 (N.D. Ohio May 30, 2012); *Porter v.*

-16-

In light of the above, the Court agrees that Glenn's Petition is untimely. Therefore, unless equitable tolling is appropriate or Glenn is entitled to begin calculating the statute of limitations from an alternative date, his Petition should be dismissed as time-barred.

**B.      Factual Predicate**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date. For the following reasons, it is recommended the Court find Glenn has failed to establish that the statute of limitations commenced at a later date pursuant to this provision.

Glenn's first habeas claim is that the trial court erred in "imposing consecutive terms of imprisonment and a maximum term of incarceration, where the record failed to support the state trial court's findings and where said sentences are contrary to law." (Doc. No. 1 at 3.) Glenn further asserts, in connection with this claim, that "[if] not for the ineffective assistance of counsel, Petitioner would have elected to proceed to trial and the outcome of the proceedings would have been different." (Doc. No. 1 at 3.) In his second habeas claim, Glenn asserts he was denied effective assistance of counsel during the plea bargaining stage of his criminal proceedings. Specifically, he claims defense counsel (1) advised him to plead guilty to a crime "for which he was not guilty of, that existed without evidence to support a finding of guilt;" and, (2) refused to proceed to jury trial "as Petitioner so desired." (Doc. No. 1 at 4.) Glenn further claims defense counsel and the prosecutor promised him he would receive a lighter sentence than was ultimately

_____

*Konteh*, 2009 WL 4282911 at * 5-7 (N.D. Ohio, Nov. 30, 2009); *United States v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999).

imposed during sentencing. (Doc. No. 1 at 4.)

Glenn does not argue that the factual predicates of these claims became known to him at some point in time after his conviction became final. Indeed, by their very nature, these claims are based on facts that would have been known to Glenn at the time of sentencing in September 2010. As such, they cannot serve to delay the running of the statute of limitation under § 2244(d)(1)(D). Accordingly, the Court finds Glenn has failed to identify any factual predicate that would justify a later start date of the statute of limitations.[10]

### C.       State Created Impediment

Pursuant to § 2244(d)(1)(B), the statute of limitations may commence later than the date upon which a petitioner's conviction and sentence becomes final if the petitioner demonstrates he was prevented from filing his federal habeas petition because of an impediment created by State action in violation of the Constitution or federal law. Here, Glenn argues his appellate counsel's failure to notify him of the state appellate court decision affirming his convictions and sentences and failure to timely appeal that decision to the Supreme Court of Ohio, constitute state-created impediments to the timely filing of the instant habeas petition. He also maintains the state appellate clerk of courts failed to notify him of that court's March 28, 2011 decision.

Specifically, in his Brief in Opposition to Respondent's Motion to Dismiss as Time-Barred, Glenn maintains the following:

> As of his September 21, 2010 conviction and sentence by the state trial court, Petitioner Glenn was imprisoned to the Ohio Department of Rehabilitation and

----

[10]Glenn does not argue that the limitations period should commence at a later date because a constitutional right asserted in the Petition was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. *See* § 2244(d)(1)(C).

Corrections ("ODRC").  Due to the nature of his incarceration, Petitioner Glenn was indigent and unable to retain an appellate attorney in his behalf to effect his timely appeal to the Ohio Supreme Court.  Petitioner Glenn's parents, Joe and Ruthie Glenn, thereby made financial arrangements to retain Petitioner's state trial court attorney, James Coulter King, to effect his timely appeal to the Ohio Supreme Court once a decision was made by the Ohio Third District intermediate appellate court.  As a result thereof, Petitioner Glenn was assured by his appellate counsel Mr. King that a timely appeal to the Ohio Supreme Court would be effected in Petitioner Glenn's behalf.

* * *

After repeated attempts by both Petitioner Glenn and his parents to contact Mr. King regarding the status of his Petitioner's state appeal proved to no avail– where Mr. King refused to respond nor provide any manner of contact– Petitioner Glenn ultimately pursued disciplinary action against Mr. King with the Ohio Supreme Court as of January 24, 2012.  (Exhibit B, attached).  In response thereof, Ohio Supreme Court Assistant Disciplinary Counsel Heather Hissom Coglianese contacted Glenn on February 29, 2012 concerning initiating disciplinary action against Mr. King for his failure to adequately affect Glenn's appeal.  (Exhibit C, attached.)

Petitioner Glenn eventually received notice of the March 28, 2011 decision of the Ohio Third District Court of Appeals as of March, 2012.  As a result thereof, on March 27, 2012, Glenn filed his delayed appeal with the Ohio Supreme Court . . . Moreover, as of July 5, 2012, Petitioner Glenn was still attempting to acquire a copy of the appellate brief Mr. King had filed with the Ohio Third District Court of Appeals, by contacting the state trial court clerk. (Exhibit D, attached.)

(Doc. No. 8 at 6-7.)  Glenn asserts that "[i]f not for the state-created impediment of the delay in

Petitioner Glenn's appellate counsel providing him notice of the March 28, 2011 judgment

affirming his state-court conviction and sentence entered by the Ohio Third District Court of

Appeals, Petitioner would have timely appealed to the Ohio Supreme Court."  (Doc. No. 8 at 7-8.)

In his Traverse, Glenn argues additionally that "[t]he Third District Court of Appeals Clerk,

create the State impediment to filing an application timely due to not giving notice of the Third

District Court of Appeals decision, on March 28, 2011, pursuant to App. R. 30A, upon all parties to

the action."  (Doc. No. 17 at 6.)  He further asserts that he "reli[ed] on paid counsel (James Coulter

-19-

King) to perfect an appeal to the Ohio Supreme Court.  Following knowledge that this appeal had been affirmed and dismissed nine month earlier, by contacting Third District Appellate Clerk and that the Clerk did not inform petitioner . . . in addition to countless attempt to contact counsel."  *Id.* at 8.  Glenn argues that, since he filed his motion for delayed appeal on March 27, 2012, the statute of limitations would have started to run on that date and expired a year later on March 27, 2013.  *Id.*

Respondent does not address this issue in his Return, despite the fact that he was expressly ordered to do so in the Court's January 10, 2014 Order.  (Doc. No. 9.)

To invoke the limitations provision set forth in § 2244(d)(1)(B), a habeas petitioner must establish that: "(1) he was prevented from filing a federal habeas petition; (2) by State action; (3) in violation of the Constitution or federal law."  *Neff v. Brunsman*, 2007 WL 912122 at * 7 (S.D. Ohio March 23, 2007).  *See also Montgomery v. Jeffreys*, 2011 WL 2784168 at * 4 (S.D. Ohio July 6, 2011.)  Interpreting this provision, the Sixth Circuit has found that "[t]he ineffective assistance of  . . . initial appellate counsel constitutes state action."  *Winkfield v. Bagley*, 2003 WL 21259699 at * 4 (6th Cir. May 28, 2003).  However, the court emphasized that "Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the [habeas] petition."  *Id.*  Relying on *Winkfield*, several courts have found § 2244(d)(1)(B) to apply in cases where the petitioner alleged facts indicating his counsel was ineffective in perfecting an appeal or pursuing an appeal requested by him, and such ineffectiveness actually prevented him from filing a timely habeas petition.  *See e.g. Waldron v. Jackson*, 348 F.Supp.2d 877, 882-886 (N.D. Ohio 2004); *Woods v. Jackson*, 2006 WL 746293 at * 5-7 (S.D. Ohio March 22, 2006).

The Court finds Glenn has failed to demonstrate that a state-created impediment prevented him from timely filing the instant habeas petition.  As an initial matter, the cases cited above that

-20-

recognize ineffective assistance of counsel as a state-created impediment for purposes of § 2244(d)(1)(B) each involved the failure of *initial* appellate counsel to timely pursue a direct appeal to the *state appellate court*. This finding is presumably predicated on the fact that the United States Supreme Court has recognized an indigent state defendant is entitled to the assistance of counsel on his or her first direct appeal as of right. *See e.g. Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814 (1963); *Coleman v. Thompson*, 501 U.S. 722, 756, 111 S.Ct. 2546 (1991). *See also Lopez v. Wilson*, 426 F.3d 339, 353 (6th Cir. 2005). Here, however, Glenn alleges ineffective assistance of counsel in failing to perfect an appeal to the Ohio Supreme Court. The Supreme Court has not extended the right to counsel beyond the first appeal of right, to state discretionary or collateral review. *See Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal as of right, and no further"); *Coleman*, 501 U.S. at 756. *See also Lopez,* 426 F.3d at 350. In the absence of such a right, it is not clear that Glenn's appellate counsel's failure to timely appeal the state appellate court decision to the Ohio Supreme Court would constitute a "state-created impediment" for purposes of § 2244(d)(1)(B).

Glenn also alleges, however, that his appellate counsel was ineffective for failing to notify him of the state appellate court decision.[11] He further asserts the state appellate clerk of court's alleged failure to notify him of that court's decision constitutes a state-created impediment. Assuming one

---

[11]The Traverse indicates Glenn retained Mr. King to appeal the state appellate court decision. (Doc. No. 17 at 8) ("The Petitioner reliance on *paid counsel* (James Coulter King) to perfect an appeal to the Ohio Supreme Court") (emphasis added). It is questionable whether any alleged ineffectiveness of retained counsel could be attributed to the State and, therefore, considered a "state-created impediment." However, the Court need to address this question to resolve this issue.

or both of these grounds, in fact, constitute a state-created impediment, Glenn has failed to either allege or demonstrate that appellate counsel's ineffectiveness actually prevented him from timely filing the instant habeas petition. In filings before this Court, Glenn asserts his parents retained Mr. King to timely appeal the state appellate court decision. (Doc. No. 8 at 6; Doc. No. 17 at 11.) After repeated attempts to reach Mr. King failed, Glenn pursued disciplinary action against him with the Ohio Supreme Court. (Doc. No. 8 at 7; Doc. No. 8-2; Doc. No. 17 at 11.) In a Grievance Form filed with the Office of Disciplinary Counsel on January 24, 2012, Glenn describes his unsuccessful attempts to contact Mr. King about his appeals in Case Nos. CR2007-0261 and CR2007-0390, and indicates that he wants to appeal these cases. (Doc. No. 8-2 at 3-4.) Glenn further states, in this Grievance Form, that "**[m]y case manager told me no appeal has been filed on my case #s.**" (Doc. No. 8-2 at 4) (emphasis added).

Based on the above, the Court concludes Glenn was aware by no later than January 24, 2012 that his appellate counsel had failed to pursue an appeal to the Ohio Supreme Court.[12] Thus, even assuming the clerk of courts' or appellate counsel's alleged failure to notify him of the decision constitute state-created impediments, any such impediment would have been removed by that date. The statute would have then started to run on January 25, 2012 and continued until Glenn filed his

---

[12] In an Affidavit attached to his Traverse, Glenn's parents (Joseph and Ruthie Glenn) aver that "[o]ur son informed us that after the Third District Appellate Court made their decision, the Clerk of the Third District never inform him. **That he became aware of the dismissal by using Allen/Oakwood Corr. Inst., Legal website in the library on or about December 2011.**" (Doc. No. 17-5 at 1) (emphasis added). Glenn's discovery of the dismissal via online legal research in December 2011 would have removed any impediment created by the state appellate clerk of court's and appellate counsel's alleged failure to notify him of the decision affirming his conviction. However, giving Glenn every possible benefit of the doubt, the Court will assume any alleged state- created impediment was not removed until January 24, 2012, when Glenn indicated that he became aware that no appeal had been filed from the state appellate court decision.

Motion for Delayed Appeal on March 27, 2012, for a total of sixty-three (63) days. The statute would have then been statutorily tolled from March 27, 2012 until the Ohio Supreme Court denied his motion on May 9, 2012. At this point, Glenn would have had three hundred and two (302) days to timely file his habeas petition, or until March 8, 2013. Glenn did not sign his habeas petition until April 17, 2013, forty (40) days late.[13]

Thus, even assuming for the sake of argument that either the clerk of courts' or appellate counsel's failure to notify him of the decision constitute a state-created impediment, the Court finds Glenn has failed to establish that any such impediment would have actually prevented him from timely filing his habeas petition.

## D.    Equitable Tolling

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011). However, the equitable tolling doctrine is granted by courts only "sparingly." *See Robertson*, 624 F.3d at 784. Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the

---

[13] The Court recognizes that *Waldron* held that the statute of limitations did not begin to run under 2244(d)(1)(B) until after the state appellate court had ruled on petitioner's motion for delayed appeal. However, as noted above, *Waldron* is distinguishable from the instant case, as it involved appellate counsel's failure to perfect petitioner's *first* appeal as of right. Moreover, the *Waldron* decision involved appointed counsel, rather than retained counsel as Glenn had here.

-23-

burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir.2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 130 S.Ct. at 2565. *See also Hall,* 662 F.3d at 749; *Griffin,* 308 F.3d at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 130 S.Ct. at 2565. That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See e.g. Keeling v. Warden*, 673 F.3d 452, 463-64 (6th Cir. 2012); *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003)(stating that a court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights").

Here, Glenn argues he is entitled to equitable tolling based on the failure of his appellate counsel to provide timely notification of the state appellate court decision. Respondent argues equitable tolling is not appropriate because Glenn failed to exercise reasonable diligence. Respondent maintains Glenn has failed to offer any explanation for why he did not take other affirmative steps to learn the status of his appeal when he knew that he was not receiving responses from Mr. King, such as contacting the clerk's office, checking the status of his appeal online, or asking his family to make contact with the state appellate court or Ohio Supreme Court. In addition, Respondent argues Glenn failed to provide a reasonable explanation for not timely filing his habeas petition, particularly in light of the fact that the Ohio Supreme Court denied his motion for delayed appeal on May 9, 2012 but he did not file the instant action until April 17, 2013.

The Sixth Circuit has found that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of their appeals' may constitute extraordinary circumstances sufficient to warrant" equitable tolling.  *Keeling*, 673 F.3d at 462 (quoting *Robinson v. Easterling*, 2011 WL 1977272 at * 3 (6th Cir. May 20, 2011)).  However, "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'"  *Robinson*, 2011 WL 1977272 at * 3 (quoting *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002)).  Rather, to obtain equitable tolling, a petitioner "must demonstrate that he exercised a reasonable diligence in protecting his appellate rights."  *Id.*

In a case similar to the one at bar, the Sixth Circuit recently affirmed the district court's refusal to equitably toll the statute of limitations, and summarized the law on this issue as follows:

> Keeling himself admits that he waited almost three years after the decision in his original appeal to the Ohio Court of Appeals before filing his first *pro se* post-conviction motion. "While this Court has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update, ... this Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half**."** *Robinson*, 424 Fed.Appx. at 443.  In *Robinson*, the petitioner requested case updates from his attorney, who failed to provide them, and the petitioner waited eighteen months between his last two update requests.  *Id*. at 440–41, 443.  This court found that the petitioner failed to exercise the required diligence in pursuing his rights and affirmed the district court decision declining to equitably toll the statute of limitations, even though the petitioner's attorney failed to inform him of the appellate decision for more than one year after it issued.  *Id.* at 440–43.  Further, we have declined to allow equitable tolling where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal. *Winkfield v. Bagley*, 66 Fed.Appx. 578, 583–84 (6th Cir. 2003).  Similarly, this court has declined to equitably toll the statute of limitations where a petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered affirming his conviction.  *Elliott v. Dewitt*, 10 Fed.Appx. 311, 312–13 (6th Cir. 2001).
>
> Here, Keeling's delay exceeds that which has previously been found excessive and inappropriate for the application of equitable tolling. *See Robinson*, 424

> Fed.Appx. at 443. Keeling did not diligently monitor the status of his appeal. *See*
> *Winkfield*, 66 Fed.Appx. at 583–84; *Elliott*, 10 Fed.Appx. at 313. Even after
> learning of the Court of Appeals's decision, Keeling did not diligently pursue his
> delayed appeal or file a timely federal habeas petition. Despite Keeling's
> argument to the contrary, he has not acted with the sufficient diligence to warrant
> equitable tolling of the statute of limitations.

*Keeling*, 673 F.3d at 463-64 (emphasis added).

Like the petitioner in *Keeling*, above, the Court finds Glenn failed to exercise reasonable diligence in either monitoring the status of his appeal or protecting his federal habeas rights. Nearly one year elapsed between the state appellate court decision (March 28, 2011) and the date Glenn filed his Motion for Delayed Appeal in the Supreme Court of Ohio (March 27, 2012). Although Glenn asserts he and his family attempted to contact appellate counsel during this time period, he does not offer any justification for failing to monitor the status of his appeal through other means, such as direct contact with the state court clerks' office. Further, even assuming Glenn's failure to diligently monitor his appeal during this time frame can be excused due to his appellate counsel's alleged ineffectiveness, Glenn offers no justification whatsoever for failing to timely file his habeas petition once his Motion for Delayed Appeal was denied. The record reflects the Ohio Supreme Court denied his motion on May 9, 2012 and yet Glenn failed to sign and mail his habeas petition until April 17, 2013, over eleven months later. In light of the above, it is recommended the Court find Glenn has failed to demonstrate reasonable diligence and that, therefore, equitable tolling is not warranted.

However, even assuming equitable tolling would be justified based on appellate counsel's alleged ineffectiveness, the Court would nevertheless find the instant Petition to be untimely. As noted above, Glenn filed a Grievance Form regarding his appellate counsel with the Office of Disciplinary Counsel on January 24, 2012. Therein, he states that "[m]y case manager told me no

-26-

appeal has been filed on my case #s." (Doc. No. 8-2 at 4.)  Consistent with the Court's findings on the issue of state-created impediment, Glenn was aware by no later than January 24, 2012 that his appellate counsel had failed to pursue an appeal to the Ohio Supreme Court.  Providing Glenn the benefit of equitable tolling until January 24, 2012, the Court finds the statute would have began to run on January 25, 2012 and continued until Glenn filed his Motion for Delayed Appeal on March 27, 2012, for a total of sixty-three (63) days.  The statute would have then been statutorily tolled from March 27, 2012 until the Ohio Supreme Court denied his motion on May 9, 2012.  At this point, Glenn would have had three hundred and two (302) days to timely file his habeas petition, or until March 8, 2013.  Glenn did not sign his habeas petition until April 17, 2013, forty (40) days late.

Thus, even if the Court were to give Glenn the benefit of the doubt and equitably toll the statute of limitations until the date he discovered that his counsel had failed to perfect an appeal to the Ohio Supreme Court (i.e. January 24, 2012), the instant Petition would nevertheless be untimely.

**E.    Actual Innocence**

In his Traverse, Glenn appears to argue that he is actually innocent of the charges.  (Doc. No. 17 at 7.)  In *McQuiggan v. Perkins*, ––– U.S. ––––, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court recently held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1).  *Id.* at 1931.  For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be

-27-

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggan*, 133 S.Ct. at 1928 (quoting *Schlup,* 513 U.S. at 329). In making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id.* (quoting *Schlup*, 513 U.S. at 332).[14]

Here, Glenn has not come forward with any evidence, much less new and reliable evidence, that he is actually innocent. Thus, the Court finds Glenn has not demonstrated that he is entitled to the actual innocence exception.

Accordingly, and in light of all of the above, it is recommended the Court find that the instant Petition is time-barred under § 2244(d)(1).

### IV.  Review on the Merits

Even if the Petition was not time-barred, it is recommended the Court find that Glenn's

---

[14] The Court notes that, here, Glenn pled guilty. "It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998). However, the Sixth Circuit has held that "[a] petitioner may claim actual innocence for the purposes of equitable tolling, even if his conviction was the result of a plea." *Connolly v. Howes*, 304 Fed. Appx. 412, 417 (6th Cir. 2008). *See also Alford v. Goodrich*, 2014 WL 359996 at * 10 (N.D. Ohio Jan. 31, 2014). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 298.

claims would nevertheless be subject to dismissal on the merits.[15]  This case is governed by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh*

*v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11,

2012); *Renico v Lett,* 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529

U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an

explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and

---

[15] Respondent argues, at length, that Glenn's First and Second Grounds for Relief are
procedurally defaulted.  (Doc. No. 10 at 18-24.)  Glenn maintains he has established
cause for the default in light of his appellate counsel's failure to either notify him of the
state appellate court decision or perfect an appeal to the Ohio Supreme Court.  (Doc.
No. 17 at 16.)  Although the parties devote substantial effort to arguing the issue of
procedural default, the Court finds it unnecessary to address this issue.  As the United
States Supreme Court has observed, federal courts are not required to address a
procedural default issue before deciding against a petitioner on the merits.  *Lambrix v.
Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule
where the procedural default question is complicated and unnecessary to the court's
determination of the case.  *See Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003);
*accord Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness

-30-

question as a test of its confidence in the result it would reach under *de novo* review," and that

"even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not

function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation

marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking

in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which

the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that

is because it is meant to be.")

### A.      Ground One

In his First Ground for Relief, Glenn asserts the trial court "committed error in imposing

consecutive terms of imprisonment and a maximum term of incarceration, where the record failed

to support the state trial court's findings and where said sentences are contrary to law."  (Doc. No.

1 at 3.)  As supporting facts, Glenn states that:

> The record failed to support the finding that imposition of the maximum term of
> incarceration is appropriate and Petitioner's conviction and sentence is illegal as a
> matter of law.  If not for the ineffective assistance of counsel Petitioner would
> have elected to proceed to trial and the outcome of the proceedings would have
> been different.

(Doc. No. 1 at 3.)

Glenn raised this claim on direct appeal.  (Doc. No. 6-1 at 35-47 (Exh. 13).)   The state

appellate court rejected it as follows:

> In his sole assignment of error, Glenn contends that the trial court erred in
> imposing prison terms greater than the statutory minimum and ordering the terms

-31-

to be served consecutively, without justification in the form of factual findings.

An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8, citing *State v. Carter*, 11th Dist. No. 2003-P-007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." [FN 3: We note that the Supreme Court of Ohio's plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, established a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing review standard adopted by three dissenting Justices in *Kalish*, we note that our decision in this case would be identical under the *Kalish* plurality's two-part test.] *Daughenbaugh*, 2007-Ohio-5774, at ¶ 8, citing *Carter,* 2004-Ohio-1181, at ¶ 44; R.C. 2953.08(G).

The trial court has full discretion to sentence an offender to any term of imprisonment within the statutory range without a requirement that it make findings or give reasons for imposing the maximum sentence, more than the minimum sentence, or ordering sentences to be served consecutively. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph seven of the syllabus. [FN 4– We note that Glenn never cites *Foster*, but instead cites several Ohio Supreme Court cases which have been overruled by *Foster*. While many have challenged *Foster*'s holdings, it remains binding law on the topic of sentencing. Accordingly, this Court must follow *Foster*. *State v. Blackburn*, 3d Dist. No. 5-09-18, 2009-Ohio-5902, ¶ 9, citing *State v. Miller*, 6th Dist. No. L-08-1314, 2009-Ohio-3908, ¶ 18.]

R.C. 2929.11, 2929.12, 2929.13, and the unsevered portions of R.C. 2929.14 govern sentencing. *State v. Petrik*, 3d Dist. No. 3-10-06, 2010-Ohio-3671, ¶ 29, citing *Foster,* 109 Ohio St.3d 1, at ¶ 36. R.C. 2929.11(A) and (B) provide as follows:

> (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender, and making restitution to the victim of the offense, the public, or both.

> (B) A sentence imposed for a felony shall be reasonably calculated to

-32-

achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

Additionally, when sentencing an offender, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism.  R.C. 2929.12(A); see also State v. Ramos, 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶ 25.  However, the trial court is not required to make specific findings of its consideration of the factors.  *State v. Kincade*, 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶ 8, citing *State v. Arnett*, 88 Ohio St.3d 208, 2000-Ohio-302.  Nor is the trial court required to state on the record that it has considered the statutory criteria or even discussed them.  *State v. Foust*, 3d Dist. No. 3-07-11, 2007-Ohio-5767, ¶ 27.

Turning to the case at bar, we find that Glenn points to nothing in the record that clearly and convincingly demonstrates that the record does not support the sentences or that the sentences are contrary to law.  First, we note that the sentences imposed by the trial court fall within the statutory ranges, and thus are not contrary to law.  As to the existence of anything in the record that clearly and convincingly demonstrates that the record does not support the sentences, Glenn argues that the trial court improperly found that he sold drugs for profit.  Specifically, Glenn argues that the record contains no evidence that he sold drugs for profit.  Review of the record, however, indicates that Glenn admitted to selling drugs for profit.  Sentencing Tr., p. 11.  Accordingly, we find that the sentences are supported by the record.

As to whether the trial court properly considered the applicable sentencing statutes, we find in the affirmative.  In both cases, the trial court stated in its judgment entry that it "considered the record, oral statements, any victim impact statement, the pre-sentence report, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution."  The trial court also, though not required to, listed specific factors in R.C. 2929.12, which it found relevant in imposing the sentences.  In light of the foregoing, we find that the trial court sufficiently executed its duty in considering the appropriate sentencing statutes.  *See, e.g., State v. Parsons*, 3d Dist. No. 2-10-27, 2011-Ohio-168, ¶¶ 15-16.

Consequently, because we find that the trial court considered the appropriate sentencing factors under R.C. 2929.12 and the principals and purpose of sentencing under R.C. 2929.11, because the trial court has discretion to sentence

-33-

> an offender to any term of imprisonment within the statutory range and to order sentences to be served concurrently or consecutively, without justification, and the repetitive nature of Glenn's offenses, we find no error in the trial court's imposition of Glenn's sentence, and overrule his sole assignment of error.
>
> Accordingly, for the aforementioned reasons, it is the order of this Court that the Judgment Entry of the Allen County Court of Common Pleas be, and hereby is, affirmed. Costs are assessed to Appellant for which judgment is hereby rendered. This cause is remanded to the trial court for execution of the judgment for costs.

(Doc. No. 6-1 at 106-110 (Exh. 15).) Glenn did not timely appeal this decision, but filed a Motion for Delayed Appeal on March 27, 2012, which was denied on May 9, 2012. (Doc. No. 6-1 at 111-126, 127 (Exhs. 16, 17, 18).)

Addressing the merits, Respondent argues that, to the extent Glenn raises a sentencing claim under state law, such a claim is non-cognizable in federal habeas proceedings. To the extent Glenn is attacking his sentence on federal constitutional grounds, Respondent first notes that he did not fairly present this claim to the state courts. He further argues that any such claim, whether based on due process, equal protection, or the Eighth Amendment, is without merit because a sentence imposed within the statutory maximum (such as Glenn's) generally does not raise a federal constitutional claim. (Doc. No. 10 at 29-31.) Glenn does not address Respondent's arguments in his Traverse.

There is no dispute that Glenn's sentence falls within the statutory range. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); *accord Kerr v. Smith*, 2009 WL 88054 at *

15 (N.D. Ohio Jan. 12, 2009) ("Claims which arise out of a state trial court's sentencing decision are not generally cognizable upon federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.") (quoting *Lucey v. Lavigne*, 185 F.Supp.2d 741, 745 (E.D. Mich. 2001)). As such, the Respondent is correct that Glenn's claim is simply not cognizable upon federal habeas review. Neither can Glenn challenge the interpretation and application of Ohio's sentencing laws, as "a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Rettig v. Jefferys*, 557 F.Supp.2d 830, 838 (N.D. Ohio 2007) (citing *Howard v. White*, 2003 WL 22146139, at *2 (6th Cir. 2003)); *Kipen v. Renico*, 2003 WL 21130033 (6th Cir. 2003).

That being said, the Sixth Circuit has recognized that "[a]lthough errors of state law are generally not reviewable in a federal habeas proceeding, an alleged violation of state law 'could, potentially, be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *Koras v. Robinson*, 2005 WL 361583 at * 5 (6th Cir. Feb. 15, 2005) (quoting *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003). A sentence imposed on the basis of material "'misinformation of constitutional magnitude' " may violate due process under some circumstances. *Id*. (quoting *Roberts v. United States*, 445 U.S. 552, 556 (1980) (citation omitted). To prevail on such a claim, the petitioner must "demonstrate that false information formed part of the basis for the sentence." *Id*. Specifically, the petitioner must show that (1) the information before the sentencing court was false; and, (2) the sentencing court relied on the false information in passing sentence. *Id. See also United States v. Stevens*, 851 F.2d 140, 143 (6th Cir.1988); *Bailey v. Howes*, 2009 WL 806962 at * 4 (W. D. Mich. March 25, 2009).

Here, Glenn does not clearly argue that his sentence was "sufficiently egregious" to amount to a denial of due process, nor does he argue that it was based on false information.  The Court does note that, although not presented as a federal constitutional claim, Glenn maintained on direct appeal that his sentence was improper because the trial court erroneously found that he sold drugs for profit.  (Doc. No. 6-1 at 108 (Exh. 15).)  However, even if the Court were to liberally construe the Petition as raising this argument to support a federal due process claim, it would be without merit. As the state appellate court correctly noted, Glenn ultimately admitted during the Sentencing Hearing that he sold drugs for money:

> THE COURT: * * * With respect to [Case Number] 0261, the Trafficking charges, when I look at the more serious offenses, well, I guess the question would be, Mr. Glenn, I mean, why did you do this– to make money? What did you get out of this?
>
> DEFENDANT: Actually, your Honor, I really didn't get nothing out of it but some prison time. I really didn't get nothing out of it. Like I said, it was just taking care–
>
> THE COURT: Well, when you sold dope did you get money or did you get dope in exchange? What was your motivation to do it?
>
> DEFENDANT: It was like an exchange just to get a hit, just to get a high. It was just to get a high.
>
> THE COURT: I mean, for example, when you sell like, well, on the one occasion you sold, well, one time it was six hundred dollars worth and another time it was like nine hundred and thirty dollars worth. **You didn't get any money out of that?**
>
> **DEFENDANT: Like a hundred.**

(Doc. No. 6-2 at 15) (emphasis added).   In light of the above, the Court finds Glenn has failed to demonstrate the trial court relied on "misinformation of a constitutional magnitude" in reaching its sentencing determination. *Koras v. Robinson*, 2005 WL 361583 at * 5.  Accordingly, Glenn's

argument that the sentence violated his due process and/or equal protection rights is without merit.

Moreover, to the extent Glenn is arguing that his sentence violates his rights under the Eighth Amendment, the Court finds this argument to be without merit as well.  The Sixth Circuit has held that "[a] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'" under the Eighth Amendment.  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  During the Change of Plea Hearing, the trial court advised Glenn that he could be sentenced to anywhere between two and twenty-six years incarceration.  (Doc. No. 11-1 at 13-14.)  Glenn does not argue that this is a misstatement of the correct statutory range.  As noted *supra,* Glenn was ultimately sentenced to nineteen years.  (Doc. No. 6-1 at 105 (Exh. 15); Doc. No. 6-2 at 18, 20).  As his sentence fell squarely within the statutory range, the Court finds Glenn cannot demonstrate a violation of the Eighth Amendment.[16]

Accordingly, it is recommended the Court find Glenn's First Ground for Relief is without merit.

**B.      Ground Two**

In his Second Ground for Relief, Glenn asserts he was "denied the effective assistance of

---

[16]  For the same reason, Glenn cannot demonstrate that his sentence violated the Eighth Amendment on the basis of a lack of proportionality between his crime and punishment. The Supreme Court has determined that strict proportionality is not required between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 959-960 (1991).  *See also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  Interpreting this "narrow proportionality principle," the Sixth Circuit has held that "only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks,* 209 F.3d at 583. As Glenn's sentence fell within the statutory range, the Court finds it is not "extreme" or "grossly disproportionate" to the offenses he committed.  *See Thompson v. Williams*, 685 F.Supp.2d 712, 728 (N.D. Ohio 2010).

trial counsel during the plea bargaining critical stage of his jury trial proceedings." (Doc. No. 1 at

4.)  As supporting facts, Glenn states that:

> State trial counsel advised Petitioner to plead guilty to a crime for which he was
> not guilty of, that existed without evidence to support a finding of guilt.  State
> trial counsel also refused to proceed to jury trial as Petitioner so desired.
> Petitioner was subjected to a breach of contract, where the conviction and
> sentence advised and promised by counsel and the State prosecutor was withheld
> once Petitioner had plead guilty.  Instead, Petitioner was adjudicated to a greater
> punishment.

(Doc. No. 1 at 4.)  Respondent argues this claim is without merit because, during the sentencing

hearing, Glenn "admitted to the judge repeatedly that he was guilty." (Doc. No. 10 at 34.)

Glenn did not raise this claim on direct appeal.  He did, however, raise it in his post-

conviction Motions to Withdraw Guilty Plea, filed on February 13, 2014 in Case Nos. CR 2007-

0390 and CR 2007-0261.  (Doc. No. 16-1 at 3-7, 14-18 (Exhs. 30, 32).)  The trial court denied

these motions on February 28, 2014.  (Doc. No. 16-1 at 8-13, 19-24 (Exhs. 31, 33).)  The court

first held it did not have authority to consider Glenn's motions to withdraw plea, in light of the

fact that Glenn's conviction was affirmed on appeal.  (Doc. No. 16-1 at 9, 20 (Exhs. 31, 33).)  It

then found that, even if it did have authority to consider Glenn's motions, they would be barred by

*res judicata*.  (Doc. No. 16-1 at 10, 21 (Exhs. 31, 33).)  Finally, the Court determined that, even if

it had the authority to consider Glenn's motions and they were not barred by *res judicata*, they

were "still without merit."  *Id*.  After reciting the standard for ineffective assistance of counsel

claims under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the

trial court held as follows:

> Defendant claims his attorney advised him that he would be sentenced to six
> years.  However, the Court finds that there is absolutely no credible evidence that
> defense counsel and the Court ever discussed defendant's receiving any particular
> sentence.  The record (specifically, the transcript of the plea hearing) is clear that

> defendant was advised of the possible sentences he could receive and that no
> promises were made by anyone in exchange for defendant's plea.

(Doc. No. 16-1 at 11, 22 (Exhs. 31, 33).)  The state court docket sheet indicates Glenn did not

appeal this ruling.  (Doc. No. 24.)

   To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently.  *See*

*United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007), citing *Brady v. United States*, 397 U.S.

742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must

be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant

circumstances and likely consequences.")  A trial court should ensure that a "defendant's plea is

voluntary and that the defendant understands his or her applicable constitutional rights, the nature

of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that

the defendant committed the crime charged." *Id.,* quoting *United States v. Webb*, 403 F.3d 373,

378–79 (6th Cir. 2005); *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). "A failure

by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel,

but absent such a claim it cannot serve as the predicate for setting aside a valid plea." *United*

*States v. Broce*, 488 U.S. 563, 574, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *Tollett v. Henderson*,

411 U.S. 258, 266–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (ineffective assistance of counsel

may prevent a defendant from entering a knowing and voluntary plea).  However, "[i]t is well

settled that a voluntary and intelligent plea of guilty made by an accused person, who has been

advised by competent counsel, may not be collaterally attacked." *Id*.

   Where a guilty plea is entered upon the advice of counsel, "the voluntariness of the plea

depends on whether counsel's advice was within the range of competence demanded of attorneys

in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)

-39-

(quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

"[T]he Supreme Court has held that "the two-part *Strickland v. Washington* test applies to

challenges to guilty pleas based on ineffective assistance of counsel." *Carley v. Hudson*, 563

F.Supp.2d 760, 771 (N.D. Ohio 2008) (citing *Hill v. Lockhart*, 474 U.S. at 58). Under *Strickland*,

a petitioner must demonstrate the following: 1) "counsel's representation fell below an objective

standard of reasonableness" and 2) "but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the second prong in the guilty plea context, a

petitioner "must show that there is a reasonable probability that but for counsel's errors, [the

petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v.*

*Lockhart*, 474 U.S. at 58–59. *See also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----

-, -----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). Indeed, the Supreme Court has repeatedly

emphasized the high degree of deference afforded state court adjudications of *Strickland* claims:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims
> of constitutional wrong, AEDPA erects a formidable barrier to federal habeas
> relief for prisoners whose claims have been adjudicated in state court. AEDPA
> requires 'a state prisoner [to] show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an error . .
> . beyond any possibility for fairminded disagreement.' *Harrington v. Richter*, 562
> U.S. ----, -----, 131 S.Ct. 770, 786-787, 178 L.Ed.2d 624 (2011). 'If this standard
> is difficult to meet' - and it is- 'that is because it was meant to be.' *Id*. at -----,
> 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice
> system has experienced the 'extreme malfunctio[n]' for which federal habeas
> relief is the remedy.' *Id*. at -----, 131 S.Ct., at 786 (internal quotation remarks
> omitted).

*Burt v. Titlow*, 134 S.Ct. 10, 15-16, 187 L.Ed.2d 348 (2013). Thus, "[w]hen a state prisoner asks a

federal court to set aside a sentence due to ineffective assistance of counsel during plea

-40-

bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Id.* at 13 (quoting *Cullen v. Pinholster*, 563 U.S. ____, ____, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)).  *See also Hodges,* 727 F.3d at 534 ("'The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.'") (quoting *Richter*, 131 S.Ct. at 788).

In his Traverse, Glenn articulates his argument on this issue as follows:

> Petitioner claim that counsel advise him to plead guilty when he was not guilty, and that the prosecutor breached a plea agreement have merit.  Petitioner and the State entered into a plea agreement in this case.  Petitioner appeared in court to enter his guilty plea on June 12, 2008. (Exhibits 5 & 6).  The terms of this agreement were filed with the Court.  (Exhibit 4).  Petitioner plead guilty and the court filed judgment entries of conviction.  (Exhibits 5 & 6).  The prosecutor acknowledged being bound by that agreement at sentencing. (Sentencing Tr. p. 2).  The prosecutor at (Tr. Page 2) is another prosecutor who did not make the recommendation at the plea hearing, on June 2008, of the petitioner receiving a six year sentence for his plea of guilty to counts one, three, and five of the indictment.

> Thus, the court did not make it abundantly clear to Petitioner, that it was not bound by the prosecutor's recommendation of a six year prison sentence. It plainly informed Petitioner that the court imposed sentence of 19 years. Petitioner can point to the way in which the court violated his equal protection and due process rights in choosing to sentence the Petitioner other than what was agreed by the prosecutor, that the Petitioner would change his not guilty plea to plead guilty on June 28, 2008 in this case. [citations omitted].

(Doc. No. 17 at 19.)  Glenn also attaches an affidavit to the Traverse,[17] in which he avers the

---

[17]As Glenn's ineffective assistance of counsel claim was adjudicated on the merits by the state trial court, federal habeas review is limited to the state court record. *See Pinholster*, 131 S.Ct. at 1400 (stating that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before the state court.")  It is unclear whether Glenn's affidavit was before the state trial court when it considered and denied his Motions to Withdraw Guilty Pleas.  In his motions, Glenn states that he is attaching an affidavit "in support of

prosecutor offered him a six year sentence in exchange for pleading guilty and his counsel "reassured [him that] this negotiated plea agreement was factual." (Doc. No. 17-1 at 1.)  He states counsel advised him that he (counsel) was confident the offer was a "genuine offer" and Glenn should accept it.  *Id.*  Glenn claims he accepted the plea agreement and withdrew his not guilty pleas, but was later sentenced to a 19 year prison term.  *Id*.

Based on the above, Glenn appears to argue his trial counsel was deficient because he erroneously assured him that he would receive a six year sentence pursuant to the plea agreement. (Doc. No. 17 at 19.)  He further maintains he "was prejudice[d] by counsel's ineffective assistance, and the State breached [the] recommended negotiated plea."  (Doc. No. 17-1 at 1.)

The record reflects the following.  On June 12, 2008, written plea agreements were filed in Case Nos. CR 2007-0261 and CR 2007-0390.  (Doc. No. 6-1 at 14-15 (Exh. 4); Doc. No. 16-1 at 1-2 (Exh. 29).)  These agreements identified the charges to which Glenn had agreed to plead guilty; and, described the maximum penalties for each charge.  *Id*.  In addition, both of these forms expressly stated that "THE STATE OF OHIO WILL MAKE NO SENTENCING RECOMMENDATION."  (Doc. No. 6-1 at 15 (Exh. 4); Doc. No. 16-1 at 2 (Exh. 29).)   The plea agreements were signed by Glenn; Glenn's trial counsel; the prosecutor; and, the state trial court

---

the recitals contained in this motion." (Doc. No. 16-1 at 3, 14 (Exhs. 30, 32).  However, the copies of the motions submitted as part of the habeas record do not contain any such affidavits.  *Id*.  In light of Glenn's *pro se* status, and giving him every possible benefit of the doubt, the Court will presume that his affidavit attached to the Traverse was, in fact, submitted to the state trial court in support of his motions to withdraw guilty plea and, therefore, part of the state court record.  Accordingly, the Court will consider Glenn's Affidavit in connection with this Ground for Relief.

-42-

judge.  *Id.* [18]

A change of plea hearing was conducted on June 12, 2008, at which Glenn; his trial counsel James King; and, assistant prosecuting attorney M. Daniel Berry appeared.  (Doc. No. 11-1.)  At this hearing, the court asked Mr. Berry to state his understanding of Glenn's plea.   The following exchange occurred:

> MR. BERRY:   Okay, now I'm straight.  Anyway, that's the case we're addressing right now, that two-count indictment [in Case No. CR 2007-0390] the State has agreed to dismiss count number one for a plea on count number two.  **State would make no recommendation as to sentencing.**
>
> The other case is a multi-count indictment. [Case No. CR 2007-0261].  It's my understanding that the defendant is going to tender a plea of guilty to count number one, which is a felony of the third degree; another plea to count number three with the State asking leave to uh, strike the verbiage in the indictment that talks about the vicinity of a school, which would make that a felony of the second degree.  As well as a plea of guilty to count number five, which is similar to count number three; we would ask leave to strike the verbiage referring to the transaction taking place in the vicinity of a school; thereby reducing the penalty to that count to a felony of the second degree.
>
> State would then ask leave to dismiss the remaining counts of that indictment.  **The State would have no position on sentencing**.  The State would request restitution on all these cases, and if my arithmetic is right, and the figures I have in my file is right for the uh, restitution, we're looking at the amount of twenty-three hundred and seventy dollars.
>
> THE COURT:   Okay.  Mr. King, did Mr. Berry correctly recite the negotiations to this point?
>
> MR. KING:   Yes, sir.

---

[18] Glenn does not assert that his signatures on either of the written plea agreements are forged.

-43-

| | |
|---|---|
| **THE COURT:** | **Alright, let me inquire then of you, Mr. Glenn. Did you understand what's been represented to the Court?** |
| **MR. GLENN:** | **Yes, sir.** |
| **THE COURT:** | **Is that the way you intend to proceed?** |
| **MR. GLENN:** | **Yes, sir.** |
| **THE COURT:** | **Okay.  Do you understand you don't have to proceed in this manner; you don't have to enter a plea in either of these cases?** |
| **MR. GLENN:** | **Yes, sir.** |

(Doc. No. 11-1 at 5-7) (emphasis added). The trial court then engaged in a colloquy with Glenn

and confirmed the counts to which he was pleading guilty, noting particularly that two of those

counts were felonies of the third degree and the remaining two counts were felonies of the second

degree. *Id*. at 9.  The court then explained:

> THE COURT:        So you need to understand what the possible sentencing
> could be in this case.  **Now the State's agreed they're not**
> **gonna make a recommendation**. You can certainly argue
> for mitigation of sentence to get the least sentence you can
> get.  But I need to make sure you understand what the
> possible sentences are.

*Id*. (emphasis added).  The court then proceeded to explain to Glenn, with respect to each count to

which he was pleading guilty, the possible sentences he could receive.  *Id*. at 9-14. The trial court

also specifically explained that he could impose either concurrent or consecutive sentences, and

explained what those terms meant.  *Id*. at 12-13.  The court then stated:

> THE COURT:        So I guess, let's put it in perspective.  I like to put it in
> perspective not to instill any fear in you, but to let you
> know both ways what the best case scenario could be, and
> what the worst case scenario could be.

-44-

> The best case scenario could be, you don't get prison on the weapons charge, and you don't get prison on count one, but you gotta get prison on counts three and five, and I have to impose prison.  If I gave you the minimum of two years on each of those counts, and the best case scenario is I give you the minimum and run them together, you'd get two years in prison, and that's all you'd have.  That is probably the best thing that could happen in sentencing in this case.
>
> On the other hand, the worst thing is, I could impose prison on all counts and run them consecutive. And I could give you the max on every count and run them consecutive, and it would be uh, – it would be, yeah, Mr. King was correct, I overheard him. It could be five years on each F-3, and eight years on each F-2. Eight and eight is sixteen; five and five is ten; ten and sixteen is twenty-six, that's the worst.  **So you can go anywhere from two years mandatory, to twenty-six years; sixteen of which would be mandatory. That's a big wide space in there. It could be anything in between that. Do you understand that?**

|                    |                                                                        |
|--------------------|------------------------------------------------------------------------|
| **MR. GLENN:**     | Yes, it– yes, it is.                                                    |
| **THE COURT:**     | **Alright, but that's my discretion, that's what I'm faced with.**      |
| **MR. GLENN:**     | **Yeah.**                                                               |

*Id*. at 13-14 (emphasis added).[19]

The court then discussed with Glenn the constitutional rights he would be giving up by pleading guilty, and confirmed that he understood and was willing to give up those rights.  *Id*. at 21-23, 25.  Finally, the court asked Glenn the following:

|                    |                                                                        |
|--------------------|------------------------------------------------------------------------|
| THE COURT:         | Have any promises been made to you in exchange for your plea that haven't already been put out on the record? |

---

[19]  The court also explained other aspects of Glenn's possible sentence, including judicial release; post-release control; probation/community control eligibility; the imposition of fines and/or court costs; and, restitution.  *Id*. at 14-21.

> MR. GLENN:      No, sir.
>
> **THE COURT:      I mean, the State's agreed to dismiss several of these counts; the State's agreed not to make a recommendation other than restitution. Have any other promises been made to you in exchange for your plea?**
>
> **MR. GLENN:      No, sir**.

*Id*. at 25 (emphasis added). The court then found that Glenn had entered his pleas knowingly and voluntarily and convicted him on the charges to which he pled guilty. *Id*. at 27. Judgment entries of conviction were entered on June 12, 2008. (Doc. No. 6-1 at 16-19 (Exhs. 5, 6).)

A sentencing hearing was scheduled for July 21, 2008 but was not conducted until September 21, 2010 due to several continuances and the fact that Glenn "made himself unavailable." (Doc. No. 6-1 at 17, 19 (Exhs. 5, 6); Doc. No. 6-2 at 6.) The record reflects that Glenn; his trial counsel James King; and, assistant prosecuting attorney Alissa M. Sterling appeared. (Doc. No. 6-2.) During this hearing, Ms. Sterling stated as follows: "Your Honor, pursuant to negotiations in both of these cases the prosecutor who handled them had agreed not to make a recommendation at sentencing; so, of course, we're bound by that today." *Id*. at 6.

Glenn then explained why he had not appeared for sentencing as scheduled, indicating he had never faced "these types of charges before" and he "just ran." (Doc. No. 6-2 at 8.) He also stated that running was "the most terrible mistake I ever made in my life." *Id*. at 9. The trial court then observed:

> THE COURT:      I don't know, Mr. Glenn, if it was the most, or, the worst decision you ever made in your life. It might be the second worst decision you ever made in your life because the first worst decision you ever made in your life was to sell drugs.
>
> MR. GLENN:      Yea. That's two. That's two.

-46-

*Id.* Later, Glenn also admitted that he sold drugs to the informant in his cases and, further, "it wasn't like the only person that I was doing that with." *Id.* at 10-11.  He later stated "I know what I did and I must be punished for it." *Id.* at 12.  The trial court then discussed various sentencing factors and sentenced Glenn to an aggregate term of 19 years incarceration. *Id.* at 18.

In light of the above, the Court finds it was not unreasonable or contrary to clearly established federal law for the state trial court to reject Glenn's ineffective assistance of counsel claim.  Other than Glenn's own self-serving statements, there is no evidence whatsoever to indicate that trial counsel misled Glenn into believing that he would receive a term of six years incarceration as the result of a plea agreement with the State.  The written plea agreements, which Glenn signed, expressly state that the State would not be making a sentencing recommendation.  This position was reiterated on the record by the assistant prosecuting attorneys during both the change of plea and the sentencing hearings.  Moreover, during the change of plea hearing, the trial court thoroughly and repeatedly explained to Glenn that he could receive a sentence anywhere between two and twenty-six years and that it was within the court's discretion to decide the length of his sentence.  Glenn acknowledged in open court that he understood this and accepted it.  At no point during either the change of plea or the sentencing hearing did Glenn express any confusion or indicate that he believed the State had promised him a six year sentence.  Indeed, Glenn assured the court that no promises had been made to him in exchange for his plea.

Based on the above, the Court finds Glenn has failed to demonstrate that his trial counsel fell below an objective standard of reasonableness.  There is simply no evidence to support this assertion.  Nor has Glenn demonstrated prejudice.  As noted above, in the context of a claim of ineffective assistance during plea negotiations, a petitioner "must show that there is a reasonable

-47-

probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 58–59.  Other than simply stating he would not have pled had he known he would receive nineteen years incarceration, Glenn offers no evidence to support a claim of prejudice.  The Court finds Glenn's statement unconvincing in light of the fact that he did not object or express any doubt or confusion when the trial court clearly and thoroughly explained to him that the State was making no sentencing recommendation and he could get up to twenty-six years imprisonment.

Finally, Glenn appears to argue, summarily, that his counsel was ineffective because he "advised him to plead guilty when he was not guilty."  (Doc. No. 17 at 19.)  The Court rejects this argument.  Glenn does not argue his counsel failed to sufficiently investigate his case or otherwise failed to pursue his claims of innocence.  Indeed, there is no evidence to suggest that Glenn ever, in fact, told trial counsel that he was innocent.  Moreover, Glenn offers no evidence of any kind to support the assertion that he was not guilty of the charges to which he pled guilty.  His statements during the sentencing hearing, cited above, strongly suggest the contrary.

Accordingly, and for all the reasons set forth above, the Court finds the state court reasonably rejected Glenn's claims of ineffective assistance of counsel.  Glenn's Second Ground for Relief is, therefore, without merit.

## V.  Request for Evidentiary Hearing

In his Traverse, Glenn requests an evidentiary hearing. (Doc. No. 17 at 16-17, 20.) Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."  *Stanford v. Parker*, 266 F.3d 442, 459–460 (6th

-48-

Cir.2001) (citing *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir.1994) (citation and internal

quotation omitted)).  However, a petition may be summarily dismissed if the record clearly

indicates that the petitioner's claims are either barred from review or without merit.  *Id.*

In this case, upon review of the pleadings and transcripts, the Court determines the issues

presented can be resolved from the record.  An evidentiary hearing is, therefore, not required.

## VI.  Conclusion

Accordingly, and for all the foregoing reasons, it is recommended that this matter be

DISMISSED as time-barred and, alternatively, on the merits.   It is further recommended that

Glenn's Motion for Leave to File Motion for Stay and Abeyance (Doc. No. 18) be DENIED.

/s/ *Greg White*
U.S. Magistrate Judge

Date: <u>June 25, 2014</u>

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-49-